**THE FRASER LAW FIRM, P.C.**
Michael T. Fraser (SBN 275185)
mfraser@thefraserlawfirm.net
4120 Douglas Blvd., #306-262
Granite Bay, California 95746
Phone: (888)557-5115
Fax: (866)212-8434

**MILSTEIN JACKSON
FAIRCHILD & WADE LLP**
Gillian L. Wade (SBN 229124)
gwade@mjfwlaw.com
Sara Avila, (SBN 263213)
savila@mjfwlaw.com
Andrew Whitman (SBN 31224)
10250 Constellation Blvd.
Los Angeles, CA 90067
Telephone: (310) 396-9600
Fax: (310) 396-9635

Counsel for Plaintiff Leland Rex Hertel
and the putative Classes

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| LELAND REX HERTEL, individually, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>FOCUS CONSUMER HEALTHCARE, LLC and CHATTEM, INC.,<br><br>    Defendants. | **Case No.:**  2:18-at-688<br><br>**CLASS ACTION COMPLAINT**<br>1.  DECEPTIVE ADVERTISING PRACTICES (CAL. BUS & PROF.CODE §§ 17500, *ET SEQ*.)<br>2.  CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ*.)<br>3.  BREACH OF EXPRESS WARRANTY<br>4.  QUASI-CONTRACT<br>5.  UNFAIR AND UNLAWFUL BUSINESS ACTS AND PRACTICES (CAL. BUS & PROF. CODE §§ 17200 *ET SEQ*.)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Leland Rex Hertel, individually and on behalf of others similarly situated, by and through his undersigned counsel, hereby files this Class Action Complaint against Defendants Focus Consumer Healthcare, LLC and Chattem, Inc. (collectively "Defendants" or "FCH") and states as follows:

### NATURE OF THE ACTION

1.      This case arises out of Defendants' unlawful merchandising practices with respect to their Garlique® standardized dietary cholesterol supplement (the "Product").

2.      The Product's trademarked slogan is "Cholesterol's Natural Enemy®."

3.      Moreover, on the top of the principal display panel, Defendants reinforce the Product's "Natural" slogan by this time stating that the Product is "All Natural."[1]

4.      Indeed, Defendants label and advertise the Product as being "natural" by prominently and uniformly displaying the word "Natural" on the Product's principal display panel, against natural coloring and imagery. Such coloring and imagery further reinforces Defendants' "natural" labeling. As a result, the Product's labeling and packaging conveys to reasonable consumers that the Product is natural and free of unnatural, synthetic, and/or artificial, ingredients.

5.      However, in spite of labeling, packaging, and advertising the Product as being "natural," the Product actually contains numerous unnatural, synthetic, and/or artificial ingredients, including (and as more specifically described *infra*) Magnesium Stearate, Stearic Acid, titanium dioxide, triacetin, and triethyl citrate, as well as sodium lauryl sulfate, which is the main industrial chemical that causes soaps and cleansers to foam. Consequently, the Product is not natural. In sum, the representations made in the advertising and on the packaging and labeling of the Product are false, misleading, and

---

1.      Upon information and belief, at some point late in the Class Period, defined *infra*, Defendants removed this "All Natural" language on the Product's packaging. However, the trademarked "Natural Enemy" slogan has remained on the Product throughout the entire Class Period. Defendants continue to sell the Product with such false, deceptive, and/or otherwise misleading slogan in the same prominent position on the Product's packaging to this day.

**DEMAND FOR JURY TRIAL**

likely to deceive reasonable consumers.

6.     Additionally, despite the implication by the name of the Product, Garlique, the Product does not contain garlic. Reasonable consumers would believe a so-called 'natural' cholesterol dietary supplement named 'Garlique' to contain garlic.

7.     Plaintiff Leland Rex Hertel ("Plaintiff") brings this action individually and on behalf of those similarly situated.  Plaintiff seeks to represent a National Class and a California Subclass (defined *infra*.).    Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits Defendants have enjoyed from their unlawful and/or deceptive business practices, as detailed herein.   In addition, Plaintiff seeks injunctive relief to stop Defendants' unlawful conduct in the labeling, packaging, advertising, and marketing of the Product.  Plaintiff makes these allegations based on his personal knowledge as to himself and his own acts and observations and, otherwise, on information and belief based on investigation of his counsel.

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendants; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

9.     This Court has personal jurisdiction because Defendants' contacts with the forum are continuous and substantial, and Defendants intentionally availed themselves of the markets within California through their sales of the Products to California consumers.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants engage in continuous and systematic business activities within the State of California.  Moreover, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.  *See* Declaration of Michael T. Fraser,

**CLASS ACTION COMPLAINT**

Esq. Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), attached hereto as **Exhibit A**.

## PARTIES

11.    Plaintiff Leland Rex Hertel is a resident of Folsom, California.  Plaintiff purchased one or more of the Product from a Walmart store in Folsom, California during the Class Period.  Plaintiff purchased the Product for personal and family use.  Plaintiff's claim is typical of all Class members in this regard.  In addition, the advertising, packaging, and labeling of the Product purchased by Plaintiff is typical of and substantially similar to the advertising, packaging, and labeling of the Products purchased by members of the Class.

12.    Defendant Focus Consumer Healthcare, LLC ("Focus") is a Delaware limited liability company, with its principal place of business at 801 Broad Street, Suite 200, Chattanooga, Tennessee 37402-2631.  Upon information and belief, Focus is the current owner and manufacturer of the Product.

13.    Defendant Chattem, Inc. ("Chattem") is a Tennessee corporation, with its principal place of business located at 1715 W. 38th Street, Chattanooga, Tennessee 37409-1248.   Upon information and belief, Chattem is the former owner and manufacturer of the Product and sold the Product to Focus during the Class Period.

14.    Defendants and their agents promoted, marketed and sold the Product at issue in this jurisdiction and in this judicial district.

15.    The unfair, unlawful, deceptive, and misleading advertising and labeling of the Product was prepared and/or approved by Defendants and their agents, and was disseminated by Defendants and their agents through labeling and advertising containing the misrepresentations alleged herein.

/
/
/

3

**CLASS ACTION COMPLAINT**

# FACTUAL ALLEGATIONS

**A.    Contrary to Defendants' Representations that the Product Is Natural, the Product Contains Numerous Non-Natural, Artificial and/or Synthetic Ingredients**

16.    Defendants either currently or during the Class Period did manufacture, market, promote, advertise, and sell, in prominent bold typeface, a Product they claim is "Cholesterol's Natural Enemy."   This statement is printed against a bright red background, which is directly underneath the Product's name and cattycorner to a similarly colored heart symbol.  The Product's general color scheme consists largely of greens and yellows, evocative of plants and a commonly understood color representing nature.  Such imagery reinforces Defendants' "Natural" representation.

17.    Indeed, Defendants represent the Product as "natural" in order to capitalize on the growing natural marketplace that has arisen as a result of consumers' desire to consume products that are free from unnatural, artificial and/or synthetic, ingredients.



Garlique - natural, drug free, and odor free dietary supplement [2]

**Products' Ingredients**

18.    Despite the implication by the name of the Product, Garlique, does not

---

2.    Screenshot taken from Defendants' website, www.garlique.com, April 7, 2018.

**CLASS ACTION COMPLAINT**

contain garlic.

19.    Despite labeling and advertising the Product as being natural, it actually contains numerous non-natural, synthetic, and/or artificial ingredients, including Magnesium Stearate, Stearic Acid, titanium dioxide, triacetin, triethyl citrate, and sodium lauryl sulfate.

20.    <u>Magnesium Stearate</u>, is a synthetic compound.[3]  It is used as a lubricant for pharmaceutical preparations and as an anti-sticking agent in medical devices.

21.    <u>Stearic Acid</u> is a white to yellowish white solid. It is produced commercially from hydrolyzed tallow which is derived either from edible sources or from hydrolyzed, completely hydrogenated vegetable oil derived from edible sources. [4]

22.    <u>Titanium Dioxide</u> is a synthetic color additive[5].  The FDA has stated that all color additives, regardless of source, are synthetic and thus, not "natural."[6] Moreover, the FDA has also explicitly stated that it would be "inappropriate" to label a product as "natural" when it includes a color additive as an ingredient.  *See* **Exhibit B**.

23.    <u>Triacetin</u> "is the triester of glycerin[7] and acetic acid" and thus, is synthetic.

24.    <u>Triethyl Citrate</u> is prepared by esterifying citric acid with ethyl alcohol.[8]

25.    <u>Sodium Lauryl Sulfate ("SLS")</u> is a manufactured surfactant that both the USDA and FDA consider to be synthetic.[9]

---

3.    *See* 7 C.F.R. § 205.605(b)

4.    *See* 21 C.F.R. § 184.1090(a).

5.    *See* 7 C.F.R. § 73.575.

6.    *See* 58 Fed Reg. 2407.

7.    *See* 7 C.F.R. § 205.606(b) (defining glycerin as a synthetic compound.

8.    21 C.F.R. § 184.1911

9.    *See* Oral Health Care Drug Product for Over-the-Counter Human Use; Antigingivitis/Antiplaque Drug Products; Establishment of a Monograph; Proposed Rules, 68 Fed. Reg. 32232,32263; *see also New American Chemical Society Video: Why Toothpaste + Orange Juice = Yuk!* Available at https://www.acs.org/content/acs/en/pressroom/newsreleases/2013/may/new-american-chemical-society-video-why-toothpaste-orange-juice-yuk.html ("When you brush your teeth SLS [a detergent] produces the foamy suds. . . .") (last visited May 8, 2018).

**CLASS ACTION COMPLAINT**

26.    Accordingly, because the Product contains numerous non-natural, synthetic, and/or artificial ingredients, including Magnesium Stearate, Stearic Acid, titanium dioxide, triacetin, triethyl citrate, and sodium lauryl sulfate, the Product is mislabeled, misleading, and misbranded under both federal and state law.

27.    7 U.S.C. § 6502(21) defines the term "synthetic" as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes."

28.    Consumers have become increasingly concerned about the effects of non-natural, synthetic and/or artificial ingredients in products. Indeed, consumers, including Plaintiff, are willing to pay, and have paid, a premium for products represented as "natural" over products containing non-natural, synthetic ingredients.[10]

29.    Reasonable consumers, including Plaintiff, are likely to be deceived into thinking the Product is "natural" and does not contain synthetic, artificial, and/or non-natural ingredients.

30.    Reasonable consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Reasonable consumers would not know the true nature of the ingredients by merely reading the ingredients label on the Products.

31.    Nor are reasonable consumers expected or required to scrutinize the ingredients list on the Products to confirm or debunk Defendants' prominent and uniform representations that the Products are "natural."

32.    Nowhere do Defendants disclose on the labeling and packaging of the Products that the ingredients described herein are in fact synthetic, artificial, and/or non-

---

10.    In 2010, for example, nationwide sales of natural products totaled $117 billion. http://www.npainfo.org/NPA/About_NPA/NPA/AboutNPA/AbouttheNaturalProductsAssociati on.aspx?hkey=8d3a15ab-f44f-4473-aa6e-ba27ccebcbb8 (last visited Jan. 25, 2017).

**CLASS ACTION COMPLAINT**

natural.  Whether a Product contains synthetic, artificial and/or non-natural ingredients is material. Therefore, Defendants misled and failed to adequately inform consumers, including Plaintiff, that the Products contain non-natural, synthetic and/or artificial ingredients, despite the claim on the Product's primary panel that the Product is natural.

33.   Based on Defendants' uniform material misrepresentations and omissions, consumers have purchased the Products to their detriment.

**B.   Plaintiff Purchased the Misbranded Product**

34.   Plaintiff relied on Defendants' material representations and omissions, described herein, in deciding to purchase the Product, including that the Product is "natural" and contained garlic.

35.   At the time Plaintiff purchased the Product, Plaintiff did not know, and had no reason to know, that the Product's packaging, labels, and advertising were misleading, deceptive and unlawful as set forth herein.  Plaintiff would not have purchased the Product, or would have purchased it on different terms, if he had known the truth.

36.   The materiality of the representations and omissions described herein establishes causation between Defendants' conduct and the injuries that Plaintiff and members of the Class sustained.

37.   However, Plaintiff continues to desire natural supplements that support cardiovascular health and regularly visits stores where the Product is sold. However, if an appropriate injunction were to issue, Plaintiff could consider purchasing the Product in the future.

38.   In addition, Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public.

39.   As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, as detailed herein, Defendants

injured Plaintiff and the other Class members in that Plaintiff and members of the Classes, among other things:

- paid a sum of money for Products that were not as represented;
- were deprived the benefit of the bargain because the Product they purchased was different than what Defendants represented and warranted;
- were deprived the benefit of the bargain because the Product they purchased had less value than what was represented by Defendants;
- were denied the benefits of a "natural" Product (and Product free of synthetic, artificial, and/or non-natural ingredients), as represented, described, warranted and promised by Defendants
- were denied the benefits of garlic in a Product called "Garlique."
- were denied the benefit of truthful supplements labeling.

## <u>CLASS DEFINITION AND CLASS ALLEGATIONS</u>

40.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself, on behalf of all others similarly situated, and as a member the Class defined as follows (collectively, the "Class"):

> All citizens of the United States who, within the relevant statute of limitations periods, purchased Defendants' Product ("Nationwide Class");

> All citizens of California who, within four years prior to the filing of this Complaint, purchased Defendants' Product ("California Subclass").

41.     Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

42.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

43.    This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

### Fed. R. Civ. P. Rule 23(a)

44.    **Numerosity**:  Members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Class consist of hundreds of thousands of purchasers dispersed throughout the United States, and the Subclass likewise consists of thousands of purchasers throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

45.    **Common Issues:**  There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

- Whether Defendants represent the Product is natural;
- Whether the Product is not natural;
- Whether Defendants represent the Product contains garlic;
- Whether the Product does not contain garlic;
- Whether Defendants made false and misleading representations in packaging the Product;
- Whether Defendants engaged in unlawful, unfair or deceptive business practices by advertising and selling its Product;
- Whether Defendants violated California Bus. & Prof. Code § 17200, *et seq*.; Cal. Bus. & Prof. Code § 17500, *et seq*.; and the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.;
- Whether Defendants committed a breach of express warranty;
- Whether Plaintiff and the Class are entitled to equitable and/or

9

injunctive relief;

- Whether Plaintiff and the Class members have sustained damage as a result of Defendants' unlawful conduct;

- The proper measure of damages sustained by Plaintiff and Class Members; and

- Whether Defendants were unjustly enriched by its deceptive practices.

46.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent because Plaintiff, like the Class members, purchased Defendants' deceptively labeled Product and were subjected to Defendants' common course of conduct

47.    **Adequacy:** Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent.  Plaintiff will fairly and adequately protect the interests of members of the Class and has retained counsel experienced and competent in the prosecution of complex class actions including complex questions that arise in consumer protection litigation.

## **Fed. R. Civ. P. Rule 23(b)(3)**

48.    **Common Issues Predominate:** The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are also met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

49.    **Superiority:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

**CLASS ACTION COMPLAINT**

a.  Absent a Class, the members of the Class will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

b.  Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

c.  When the liability of Defendants have been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

d.  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendants.

50.  Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

51.  Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action. Notice can be accomplished by publication for most Class Members. Further, direct notice may be possible for those who purchased the Product online.

**Fed. R. Civ. P. 23(b)(2)**

52.  The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final

**CLASS ACTION COMPLAINT**

injunctive or equitable relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
### Violations of California Business & Professions Code §§ 17500, *et seq.*
### (By Plaintiff and the California Subclass)

53.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

54.    California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . . ."

55.    Defendants violated § 17500 when they represented, through their false and misleading advertising and other express representations, that Defendants' Product possessed characteristics and value that it did not actually have.

56.    Defendants' deceptive practices were specifically designed to induce reasonable consumers like Plaintiff to purchase the Product.  Defendants' uniform, material representations and omissions regarding the Product were likely to deceive, and Defendants knew or should have known that their uniform representations and omissions were untrue and misleading.  Plaintiff purchased the Product in reliance on the representations made by Defendants, as alleged herein.

57.    Plaintiff and members of the California Subclass have been directly and proximately injured by Defendants' conduct in ways including, but not limited to, the monies paid to Defendants for the Product that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Subclass members.

58.    The above acts of Defendants, in disseminating material misleading and deceptive representations and statements throughout California to consumers, including Plaintiff and members of the California Subclass, were and are likely to deceive reasonable consumers in violation of § 17500.

59.    In making and disseminating the statements alleged herein, Defendants

knew or should have known that the statements were untrue or misleading, and acted in violation of § 17500.

60.    Defendants continue to engage in unlawful, unfair and deceptive practices in violation of §17500.

61.    As a direct and proximate result of Defendants' unlawful conduct in violation of § 17500, Plaintiff and members of the California Subclass, pursuant to § 17535, are entitled to an Order of this Court enjoining such future wrongful conduct on the part of Defendants, and requiring Defendants to disclose the true nature of their misrepresentations.

62.    Plaintiff and members of the California Subclass also request an Order requiring Defendants to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendants by means of such acts of false advertising, plus interests and attorneys' fees.

**SECOND CAUSE OF ACTION**
**Violations of Consumer Legal Remedies Act**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(By Plaintiff and the California Subclass)**

63.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

64.    Plaintiff brings this action pursuant to California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

65.    The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

66.    The Product is a "good," as defined by the CLRA in California Civil Code §1761(a).

67.    Defendants are "person[s]" as defined by the CLRA in California Civil Code §1761(c).

68.    Plaintiff and members of the California Subclass are "consumers," as

defined by the CLRA in California Civil Code §1761(d).

69.   Purchase of the Product by Plaintiff and members of the California Subclass are "transactions," as defined by the CLRA in California Civil Code §1761(e).

70.   Defendants violated Section 1770(a)(5) by representing that the Product has "characteristics, . . . uses [or] benefits . . . which [it] do[es] not have" in that the Product is falsely labeled and advertised as being, among other things, "natural." Defendants knew that consumers will often pay more for products with these attributes and have unfairly profited from their false and misleading claims.

71.   Similarly, Defendants violated section 1770(a)(7) by representing that the Product is "of a particular standard, quality, or grade . . . if [it is] of another" by falsely and deceptively labeling and advertising the Product as, among other things, "natural."

72.   In addition, Defendants violated section 1770(a)(9) by advertising the Product "with intent not to sell them as advertised" in that the Product is falsely labeled and advertised as, among other things, "natural."

73.   Defendants' uniform, material, representations and omissions regarding the Products were likely to deceive, and Defendants knew or should have known that their representations and omissions were untrue and misleading.

74.   Plaintiff and members of the California Subclass could not have reasonably avoided such injury.  Plaintiff and members of the California Subclass were unaware of the existence of facts that Defendants suppressed and failed to disclose; and, Plaintiff and members of the California Subclass would not have purchased the Product and/or would have purchased the same on different terms had they known the truth.

75.   Plaintiff and members of the California Subclass have been directly and proximately injured by Defendants' conduct.  Such injury includes, but is not limited to, the purchase price of the Product and/or the price of the Product at the prices at which they were offered.

76.   Given that Defendants' conduct violated § 1770(a)(5), Plaintiff and members of the California Subclass are entitled to seek and do seek injunctive relief to

**CLASS ACTION COMPLAINT**

put an end to Defendants' violations of the CLRA.

77. Moreover, Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally misled and withheld material information from consumers to increase the sale of the Product.

78. Pursuant to California Civil Code § 1782(a), Plaintiff on his own behalf, and on behalf of members of the California Subclass, notified Defendants of the alleged violations of the Consumer Legal Remedies Act. Despite giving Defendant 30-days from the date of the notification letter to provide appropriate relief for violations of the CLRA, Defendants have failed to provide any such relief. As such, Plaintiff also seeks compensatory, monetary and punitive damages, in addition to equitable and injunctive relief, and requests that this Court enter such Orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief as is provided in California Civil Code § 1780 and in the Prayer for Relief.

79. Plaintiff further requests that the Court enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2).

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty**
**(By Plaintiff, Nationwide Class and California Subclass)**

80. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

81. By advertising and selling the Product at issue, Defendants made promises and affirmations of fact on the Product's packaging, and through their marketing and advertising, as described above. This labeling and advertising constitutes express warranties and became part of the basis of the bargain between Plaintiff and members of the Class, and Defendants.

82. Defendants purport, through their advertising, to create express warranties that the Product is, among other things, "natural."

83. Despite Defendants' express warranties about the nature of the Product, the ingredients in the Product are not natural, and the Product is, therefore, not what Defendants represented it to be—natural.

84. Accordingly, Defendants breached express warranties about the Product and their qualities because the Product does not conform to Defendants' affirmations and promises.

85. As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and members of the Class were harmed, for example, in the amount of the purchase price they paid for the Product. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### Breach of Quasi-Contract
### (By Plaintiff, the Nationwide Class and California Subclass)

86. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

87. By purchasing the Product, Plaintiff and members of the Class conferred a benefit on Defendants in the form of the purchase price of the Product.

88. Defendants had knowledge of such benefits.

89. Defendants appreciated the benefit because, were consumers not to purchase the Product, Defendants would not generate revenue from the sales of the Product.

90. Defendants' acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent and misleading representations and omissions.

91.    Equity cannot in good conscience permit Defendants to be economically enriched for such actions at the expense of Plaintiff and members of the Class, and therefore restitution and/or disgorgement of such economic enrichment is required

### FIFTH CAUSE OF ACTION
**Violations of Business and Professions Code § 17200, *et seq*.)**
**(By Plaintiff and the California Subclass)**

1.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

2.    Defendants' conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq*. (the "UCL"). The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

3.    Plaintiff brings this claim seeking equitable and injunctive relief to stop Defendants' misconduct, as complained of herein, and to seek restitution of the amounts Defendants acquired through the unfair, unlawful, and fraudulent business practices described herein.

4.    Defendants' knowing conduct, as alleged herein, constitutes an "unfair" and/or "fraudulent" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

5.    Defendants' conduct was and continues to be unfair and fraudulent because, directly or through their agents and employees, Defendants made uniform materially false representations and omissions that the Product was "natural," when in fact it was not.

6.    Defendants are aware that the representations and omissions they have made about the Product were and continue to be false and misleading.

7.    Defendants had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in their practices related to the labeling and

advertising of the Product.

8.    There were reasonable alternatives available to Defendants to further Defendants' legitimate business interests, other than the conduct described herein.

9.    Defendants' misrepresentations of material facts, as set forth herein, also constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

10.    Defendants' conduct in making the representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors.  This conduct engenders an unfair competitive advantage for Defendants, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

11.    In addition, Defendants' conduct was, and continues to be, unfair, in that the injury to countless purchasers of the Product is substantial, and is not outweighed by any countervailing benefits to consumers or to competitors.

12.    Moreover, Plaintiff and members of the California Subclass could not have reasonably avoided such injury.  Defendants' uniform, material representations and omissions regarding the Product were likely to deceive, and Defendants knew or should have known that their representations and omissions were untrue and misleading.  Plaintiff purchased the Product in reliance on the representations made by Defendants, as alleged herein.

13.    Plaintiff and members of the California Subclass have been directly and proximately injured by Defendants' conduct in ways including, but not limited to, the monies paid to Defendants for the Product that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Subclass members.

14.    As a result of the business acts and practices described above, Plaintiff and

members of the California Subclass, pursuant to § 17203, are entitled to an Order enjoining such future wrongful conduct on the part of Defendants and such other Orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendants.

15.     Pursuant to Civil Code § 3287(a), Plaintiff and the California Subclass are further entitled to pre-judgment interest as a direct and proximate result of Defendants' unfair and fraudulent business conduct.  The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the California Subclass are entitled to interest in an amount according to proof.

## **PRAYER**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendants as follows:

A. For an order certifying the Nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Class and Subclass; and naming Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

B. For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

C. For an order awarding, as appropriate, damages to Plaintiff and the Class;

D. For an order awarding restitution or disgorgement to Plaintiff and the Class for all causes of action;

E. For an order requiring Defendants to immediately cease and desist from selling its misbranded Product in violation of law; enjoining Defendants from continuing to label, market, advertise, distribute, and sell the Product in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

F. For an order awarding attorneys' fees and costs;

**CLASS ACTION COMPLAINT**

G. For an order awarding punitive damages;

H. For an order awarding pre-and post-judgment interest; and

I.  For such other and further relief as the Court deems just and proper.


DATED:  May 10, 2018                    **THE FRASER LAW FIRM, P.C.**


                                   By: /s/ Michael T. Fraser, Esq.
                                       Michael T. Fraser
                                       *Attorney for Plaintiff*


                                       Gillian L. Wade
                                       Sara D. Avila
                                       Andrew Whitman
                                       **MILSTEIN JACKSON FAIRCHILD**
                                       **& WADE, LLP**

                                       *Attorneys for Plaintiff and the putative Classes*

# EXHIBIT A



DEPARTMENT OF HEALTH AND HUMAN SERVICES                    Public Health Service

Food and Drug Administration
College Park, MD  20740-38

DEC 1 1 2014

Dr. Urvashi Rangan
Mr. Michael Crupain
Food Safety & Sustainability Center
Consumers Union / Consumer Reports
101 Truman Avenue
Yonkers, NY 10703

Dear Dr. Rangan and Mr. Crupain:

This is in response to your letter dated January 21, 2014 to the Food and Drug Administration
(FDA) regarding use of the term "natural" in the labeling of foods and beverages containing
caramel color. You requested clarification on FDA's statement about "natural" labeling and
requested specific changes to the way artificial colors are labeled on foods and beverages in
general. You also asked that FDA ban the use of the term "natural"  on food products that
contain caramel color or any artificial color and requested that FDA amend 21 CFR 101.22(k)(2)
to clarify the labeling of color additives not subject to certification.

You are correct in noting that FDA does not have any regulation or guidance specifically about
the term "natural" for labeling purposes. However, FDA does have a longstanding policy stated
in the preamble of the Nutrition Labeling and Education Act final rule, 58 FR 2407, published
January 6, 1993. Our policy on the use of the term "natural" is that "natural" means that nothing
artificial (including artificial flavors) or synthetic (including all color additives regardless of
source) has been included in or has been added to a food that would not normally be expected to
be in the food. FDA agrees that the use of the word "natural" on products that contain any
artificial ingredients is inappropriate.

Regarding your request that 21 CFR 101.22 (k) be modified to require use of the term "artificial"
in the ingredient statement when caramel color is used, we state in 21 CFR 101.22 (a)(4) that we
consider all color additives as artificial.  Also, Section 403(k) of the Food, Drug and Cosmetic
Act states that a food is misbranded if it does not bear labeling stating a food contains an
artificial color. The statute also states that a color not considered to be a certified color, such as
caramel color, is not required to be labeled by its common or usual name, and that terms such as
"color added" is allowed.

We appreciate you bringing to our attention the product labels attached to the end of your letter.
We share your concern for the truthful labeling of food products. Letters such as yours help us to
become aware of labeling issues that arise in the marketplace.

Page -2-Dr. Rangan & Mr. Crupain

Moving forward, we are interested in pursuing a public process to consider our policy on "natural" and intend to seek public comment regarding this issue. As part of this process, we anticipate addressing how color additives fit into our regulatory position. We will certainly take the concerns raised in your letter into account.

Sincerely yours,

Philip C. Spiller
Acting Director
Office of Nutrition, Labeling
   and Dietary Supplements
Center for Food Safety
   and Applied Nutrition